Rockingham, ⟩
Nov. 4, 1908. ⟨

## CLOUGH v. ROCKINGHAM COUNTY LIGHT & POWER CO.

In an action against an electric light company to recover for injuries occasioned to a person in a highway by contact with its wires, evidence that the wires were strung across the way without license from the municipality, as required by chapter 81, Public Statutes, is competent upon the question of the defendant's negligence.

Declarations of an assumed agent to a third person are not competent to prove the agency, but are admissible to explain the conduct of one who relied upon the representations to his injury.

The statute requiring notice to an electric company of an intended disconnection of its wires applies only to cases where the wires are lawfully located in the highway.

The fact that the superintendent of a street railway habitually directed its linemen to make repairs upon wires of an electric power company has no tendency to prove his implied authority to delegate the performance of that duty to employees other than linemen.

CASE, for personal injuries alleged to have been caused by the defendants' negligence. Trial by jury and verdict for the plaintiff. Transferred from the October term, 1907, of the superior court by *Wallace*, C. J.

The plaintiff's evidence tended to prove the following facts: The plaintiff is a carpenter and was employed to assist in moving a small house through the streets of Portsmouth by one Ham, who had a permit for the work from the city authorities. The building was drawn on wheels. To move it to its destination it was necessary to pass a certain point where the defendants had strung two telephone wires across a street and about twenty feet above its surface, and on the same set of poles, about two feet above the telephone wires, two electric light wires, each carrying 6,000 volts of electricity, and on the same poles, about four feet above the light wires, certain power wires, each carrying 13,000 volts of electricity. All these wires carried sufficient electricity to kill or severely injure a person coming in contact with them. The defendants had no license or location to place poles in and string wires across the street at this point, as required by chapter 81, Public Statutes. As the building rested on the wheels, its top was a little higher than the telephone and electric light wires. One of the men engaged in moving the building telephoned to Hayden, superintendent of the railway company, asking him to send a lineman to take charge of and look after the wires while

the building was being moved under them. Hayden sent Burbank, who worked for both companies, being foreman of the electric railway company's car-barn at Stratham and rotary tender for the defendants at the car-barn, and he took charge of and gave directions as to moving the building under the wires at the time of the accident. The plaintiff was on top of the building, and when the wires caught on the roof, he attempted to pry them up with a hammer, so that the building would pass under them, and in so doing was severely injured by a shock of electricity.

The evidence also tended to prove that the wires were uninsulated, and that such a condition is dangerous; that the defendants were negligent in the location, construction, and management of the wires at the time and place of the accident; and that the plaintiff was injured in consequence of the defendants' negligence, being himself in the exercise of due care at the time. There was no evidence that Hayden or the railway company were expressly authorized to send Burbank to take charge of the defendants' high tension lines, and the question whether there was evidence that he had implied authority is discussed in the opinion.

At the close of the plaintiff's evidence the defendants moved for a nonsuit. The motion was denied and they excepted. They also excepted to the following portion of the charge to the jury: "One of the disputed points in this case is whether Burbank was present representing the defendant at the time of the accident. The plaintiff claims he was, and the defendant that he was not. You will determine whether he was sent there as a representative of the electric railway company or of the defendant; and if he was sent representing the defendant, whether the person who sent him was authorized to do so. The defendant claims that Burbank was there as a representative of the railway company, expecting and understanding that the building was to be moved under the railway wires. The plaintiff claims Burbank was sent as an employee of the power company—that is, of the defendant. You will determine how that was. If he was sent there only as an employee of the railway company, then none of his acts bind the defendant. If he was sent there as an employee of the power company, you will then determine whether Hayden, who sent him, had authority to send Burbank for the power company; for if he had not, then none of his acts bind the power company. Hayden was not an officer of the power company, and it was not claimed by the plaintiff that he has shown Hayden or the railway company was expressly authorized by the defendant, in writing or orally, to act for it in regard to its lines. But it is claimed by the plaintiff that the authorization of the railway company to act for the power company is shown by repeated acts, where the rail-

way company by its officers has directed linemen to attend to the power company's line, and that this has been done under such circumstances that the knowledge and acquiescence of the power company is shown. An agency may arise by implication from repeated acts done with the acquiescence of the principal. If you are satisfied that the railway company was habitually delegating linemen or other employees of the railway company to work upon and attend to the defendant's lines under such circumstances that the defendant must have known and acquiesced therein, then you may infer that the railway company was authorized to do these acts." Other exceptions taken by the defendants appear in the opinion.

*Page & Bartlett* and *Ernest L. Guptill*, for the plaintiff.

*Kivel & Hughes*, for the defendants.

BINGHAM, J. The motion for a nonsuit was properly denied There was sufficient evidence from which it could be found that the defendants were negligent and that the plaintiff was in the exercise of due care.

The evidence that the wires were strung across the highway without license, as required by chapter 81, Public Statutes, was properly left to the jury, together with the other evidence in the case tending to show that the defendants were negligent. The instructions of the court in regard to this matter were correct. *Lane* v. *Concord*, 70 N. H. 485; *Bresnehan* v. *Gove*, 71 N. H. 236; *Nadeau* v. *Sawyer*, 73 N. H. 70.

An alleged agent may testify to the fact of his agency. *Union Hosiery Co.* v. *Hodgson*, 72 N. H. 427, 432; *Kent* v. *Tyson*, 20 N. H. 121, 126; 2 Wig. Ev., s. 1078, note 4. But a third person cannot testify to declarations made by him for the purpose of establishing his agency. *Nebonne* v. *Railroad*, 67 N. H. 531; 2 Wig. Ev., s. 1078. His declarations, however, may be "received provisionally as verbal acts indicating that he was acting on another's behalf, not his own, leaving it to subsequent proof to establish his connection as agent." 2 Wig. Ev., s. 1078. Therefore, the declarations of Burbank to the extent that they were used to establish his agency were incompetent; but as part of the *res gestæ* and as bearing upon the plaintiff's exercise of due care in attempting to raise the wires from the roof of the building, they were clearly admissible. The plaintiff had the right to understand, from the fact that Burbank came and took charge of the wires in response to a request made upon Hayden, that he could

properly rely upon such information as Burbank gave him, and that it would be safe to attempt to raise the wires as he did.

The exception taken to the plaintiff's failure to show that written notice was served on the defendants, as required by section 14, chapter 81, Public Statutes, is without merit. No attempt was made to disconnect the defendants' wires or to remove their supports; and if there had been, it is not clear that the defendants would have been entitled to the statutory notice. It would seem, rather, that the notice contemplated by the statute was intended to apply only to cases where the wires or poles that are to be disconnected or removed are lawfully in the highway.

The plaintiff concedes that Hayden was not expressly authorized by the power company to direct Burbank to take charge of their high tension wires at the place where the plaintiff was injured; and the defendants' motion for a nonsuit and exception to the charge presents the inquiry whether there was any evidence from which implied authority could be found. It appears that Day was the chief electrician of the railway company; that he not only had charge of the high tension wires of that company, but also of the power company, and had under him some fourteen linemen who were located in different places through the territory traversed by the lines of the two companies. Each crew of men had a foreman. The Hampton crew, whose duty it was to take charge of the lines where the plaintiff was injured, consisted of three men and a foreman. The linemen constructed all the new work of the railway company, and moved and repaired all of their lines of wire when necessary. They also had charge of the high tension lines of the power company. Each company bore their part of the expense thus incurred. On the day of the accident, when Hayden was requested to send a lineman to take charge of the wires in the vicinity where the house was being moved, all the linemen in the Hampton crew were away at work, and Burbank, the foreman of the Stratham car-barn, who also tended a rotary machine for the defendants at that place, was sent. As foreman of the car-barn for the railway company and tender of the rotary machine for the power company, he had nothing to do with the high tension lines of either company. There was no evidence that Hayden, or any officer of the railway company, had at any time, other than the one in question, called upon any of the men in the employ of the power company or of the railway company, except linemen under the supervision of Day, to take charge of the high tension wires of the power company. The facts, that it was the duty of linemen employed under Day to take charge of the power lines of both companies, that they were required to report to him what work was necessary to be done on both lines, and in case of an

emergency to make repairs themselves without reporting, have no tendency to prove that Hayden was authorized by the power company to direct men in the employ of the railway company or of the power company, other than linemen, to take charge of or work upon the high tension lines of the power company. If it might be found that officers of the railway ·company, besides Day, were authorized to direct linemen to make repairs upon and take charge of the high tension lines of the power company, it could not be found that they had authority to direct men who were not linemen under Day to do such work, and for this reason there must be a new trial.

*Verdict set aside.*

All concurred.